UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:23-cr-00087-JAW-1 |
| | ) | |
| STEVEN SAYLES | ) | |
| | ) | |

**ORDER ON MOTION TO DISMISS INDICTMENT**

A defendant indicted on multiple counts of distribution of controlled substances and possession of firearms moves to dismiss the indictment due to alleged prosecutorial misconduct. The Court concludes that the defendant has not established the high level of misconduct necessary to justify dismissal of the indictment and dismisses the motion.

## I. BACKGROUND

### A. Procedural Background

On August 23, 2023, a federal grand jury indicted Steven Sayles on one count of distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1). *Indictment* (ECF No. 3). The grand jury issued a superseding indictment on July 25, 2024, charging Mr. Sayles with distribution of fentanyl in violation of 21 U.S.C. § 841(a)(1), possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), possession of firearms in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A), and felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). *Superseding Indictment* (ECF No. 27). The superseding indictment included two forfeiture allegations. *Id.* at 3-5. (ECF No. 41)

When the Government brought this criminal case, it was represented by Assistant United States Attorney (AUSA) David Joyce of the Maine United States Attorney's Officer (Me. USAO). *See Mot. to Seal* (ECF No. 1). On October 21, 2024, AUSA Shira Furman of the Me. USAO filed her notice of appearance on behalf of the United States. *Not. of Appearance* (ECF No. 41). On October 23, 2024, AUSA Daniel J. Perry of the Me. USAO filed his notice of appearance on behalf of the United States. *Not. of Appearance* (ECF No. 44). On October 25, AUSA Nicholas S. Heimbach also of the Me. USAO filed his notice of appearance on behalf of the United States. *Not. of Appearance* (ECF No. 45). On January 29, 2025, AUSA Geoffrey Ward of the New Hampshire U.S. Attorney's Office (NH USAO) filed his notice of appearance on behalf of the United States. *Not. of Appearance* (ECF No. 55). On February 4, 2025, AUSAs Furman, Joyce, Heimbach, and Perry filed motions to withdraw from the case. *Mots. to Withdraw* (ECF Nos. 58, 59, 60, and 61). The Court granted all four motions on February 5, 2025. *Order* (ECF No. 64). Subsequently, AUSA Matthew T. Hunter of the NH USAO filed his appearance on April 16, 2025. *Not. of Appearance* (ECF No. 77). AUSA Ward filed his motion to withdraw from the case on May 1, 2025, *Mot. to Withdraw* (ECF No. 78), which the Court granted the same day. *Order* (ECF No. 79). AUSA Alexander Chen of the NH USAO filed his notice of appearance on September 26, 2026. *Not. of Appearance* (ECF No. 157).

The grand jury issued another superseding indictment against Mr. Sayles on June 17, 2026; charging him with distribution of fentanyl in violation of 21 U.S.C. § 841(a)(1) (Count One), possession with intent to distribute 28 grams or more of

cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Count Two), possession of firearms in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three), felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(8) (Count Four), possession of machineguns, in violation of 18 U.S.C. § 922(o) and § 924(a)(2) (Count Five), possession of unregistered machineguns, in violation of 26 U.S.C. § 5861(d) (Count Six), possession of firearms silencer unidentified by serial number, in violation of 26 U.S.C. § 5861(i) (Count Seven), and possession of unregistered firearms silencer, in violation of 26 U.S.C. § 5861(d) (Count Eight). *Second Superseding Indictment* (ECF No. 144). The superseding indictment included four forfeiture allegations. *Id.* at 5-10.

On August 20, 2026, Mr. Sayles filed a motion to dismiss the indictment. *Def.'s Mot. to Dismiss* (ECF No. 151) (*Def's Mot.*). The Government filed its response on September 24, 2026. *Gov't's Resp. in Opp'n to Def.'s Mot. to Dismiss* (ECF No. 155) (*Gov't's Opp'n*). Mr. Sayles filed his reply on October 20, 2026. *Def.'s Reply to Gov't's Resp. in Opp'n to Def.'s Mot. to Dismiss* (ECF No. 161) (*Def's Reply*).

**B. Factual Background**

In the summer of 2023, law enforcement officials began monitoring Steven Sayles's activity. *Gov't's Opp'n* at 1. A confidential informant conducted a controlled purchase of fentanyl from Mr. Sayles on July 11, 2023. *Id.; Def's Mot.* at 1. Later that month, individuals believed to be rival drug dealers violently assaulted Mr. Sayles. *Id.* Those individuals were charged in a separate federal case. *Id.* Subsequently, the Me. USAO presented a case against Mr. Sayles to the grand jury

on August 23, 2023, obtaining a one count indictment. *Def's Mot.* at 1. The Me. USAO then sought a superseding indictment adding additional charges related to distribution of cocaine base and possession of firearms. *Gov't's Opp'n* at 1. The case was eventually transferred to the NH USAO. *Id.* The NH USAO then secured a second superseding indictment against Mr. Sayles, adding additional counts related to his possession of firearms. *Id.* at 1-2. Mr. Sayles subsequently filed this motion to dismiss on grounds of perceived prosecutorial misconduct and a conflict of interest in prosecution. *Def.'s Mot.* at 11.

## II. POSITIONS OF THE PARTIES

### A. Steven Sayles's Motion

Mr. Sayles argues that the Government's shuffling of prosecutors and subsequent reassignment of the case from the Maine to the New Hampshire USAO was the result of his status as a victim in another federal prosecution and evidences a conflict of interest in prosecuting him. *Id.* at 4-5. Mr. Sayles notes that the Crime Victims' Rights Act (CVRA) places procedural obligations on prosecutors and obligates them to ensure that victims are accorded their rights. *Id.* at 5-6. Mr. Sayles contends that federal prosecutors should have disclosed Mr. Sayles's status as a victim in another federal case when presenting evidence against him to the grand jury. *Id.* at 6. He argues this disclosure was imperative given the overlapping evidence. *Id.* at 7. He further contends that this omission formed part of a broader series of alleged material misrepresentations, including a failure to explain that, on July 29, 2023, when Mr. Sayles was observed at 5 Cutts Street, a location allegedly

associated with drug trafficking, he was being held captive by other drug dealers. *Id.* Mr. Sayles argues that the prosecutors proceeded against him despite a clear conflict of interest pursuant to the Maine and New Hampshire Rules of Professional Conduct. *Id.* at 8.

Mr. Sayles also points to other alleged factual misrepresentations made to the grand jury by Task Force Officer Thomas Lapierre (TFO Lapierre), who testified regarding the controlled purchase. *Id.* at 9. He claims that TFO Lapierre testified inaccurately that the informant had been searched with nothing found prior to the transaction. *Id.* He also claims that the video surveillance reveals that the informant tampered with the drugs she allegedly purchased. *Id.* He argues that TFO Lapierre testified that all five guns recovered during the investigation were actual firearms, when in fact only three of the five were reportedly functional. *Id.* at 10.

Mr. Sayles notes that a defendant seeking a dismissal on either constitutional or ethical grounds must prove actual prejudice. *Id.* at 10-11. He claims that this litany of prosecutorial misconduct impacted the grand jury process and substantially prejudiced the Defendant, and that it was unlikely the grand jury would have returned an indictment had they heard the substantial evidence omitted. *Id.* at 11.

**B. The Government's Opposition**

In response, the Government argues that Mr. Sayles's arguments are meritless because he has failed to identify any misconduct that substantially influenced the grand jury's decision to return the second superseding indictment. *Gov't's Reply* at 1. The Government notes that law enforcement began monitoring Mr. Sayles before he

was violently assaulted. *Id.* The Government states that it is aware of no caselaw suggesting it was required to disclose Mr. Sayles's victim status to the grand jury, arguing that his victim status is irrelevant to the charged offenses and, at most, constitutes a mitigation argument that could be presented at sentencing. *Id.* at 3. The Government further argues that even if Mr. Sayles's victim status were relevant and exculpatory, the failure to present such evidence to the grand jury would not warrant dismissal. *Id.* at 3-4.

The Government contests Mr. Sayles's characterization of the evidence surrounding the controlled purchase, and further argues that, even assuming Mr. Sayles was accurate, a misstatement or mistake does not warrant dismissal of an indictment in the absence of evidence that the statement was intentionally false and substantially influenced the decision to indict. *Id.* at 4-5. The Government states that Mr. Sayles's firearm argument is frivolous and claims that a weapon does not need to be operable to be a firearm. *Id.* at 6. Finally, the Government characterizes Mr. Sayles's argument as to potential conflicts of interest in prosecution as speculative and unsubstantiated, pointing out that accepting his position would effectively render him immune from prosecution by the entire United States Department of Justice. *Id.* at 7.

**C. Steven Sayles's Reply**

In reply, Mr. Sayles points out that the Government has provided no valid basis or explanation for why it struggled to find a prosecutor suitable to prosecute him. *Def's Reply* at 2. He argues that the Government has not refuted that the

Confidential Informant was under the influence of illegal drugs during the controlled purchase. *Id.* at 5. This, he reasons, undermines the credibility of the informant and the informant's ability to accurately perceive what occurred. *Id.* He restates his argument that TFO Lapierre and Attorney Joyce withheld exculpatory evidence by not presenting the report on the guns' functionality to the grand jury. *Id.* at 6. Mr. Sayles concludes by reiterating that these issues cast grave doubt on the independence of the decision to indict from the influence of misconduct. *Id.* at 6-7.

## III. LEGAL STANDARD

Unlike civil actions, an indictment is not generally subject to dispositive motion practice. *United States v. Poulin*, 645 F. Supp. 2d 17, 22 (D. Me. 2009); *See also United States v. Li*, 206 F.3d 56, 62 (1st Cir. 2000). "[D]ismissing an indictment is an extraordinary step," *Li*, 206 F.3d at 62 (quoting *United States v. Stokes*, 124 F.3d 39, 44 (1st Cir. 1997)) because, by returning an indictment, a grand jury is carrying out a constitutionally sanctioned function. *See* U.S. CONST. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury . . ."). In the First Circuit's words, "[w]hen a federal court uses its supervisory power to dismiss an indictment it directly encroaches upon the fundamental role of the grand jury." *Whitehouse v. United States District Court*, 53 F.3d 1349, 1360 (1st Cir. 1995) (citing *Bank of Nova Scotia v. United*

*States*, 487 U.S. 250, 263 (1988)). This power is "appropriately reserved, therefore, for extremely limited circumstances."[1] *Id.*

"In rare and extreme circumstances, a federal court has the authority to dismiss criminal charges as a sanction for government misconduct." *United States v. Guzman*, 282 F.3d 56, 59 (1st Cir. 2002) (citing *United States v. Russell*, 411 U.S. 423, 431-32 (1973); *United States v. Mosley*, 965 F.2d 906, 911 (10th Cir. 1992)). To succeed under this theory, Mr. Sayles must demonstrate Government misconduct "so appalling and egregious as to violate due process by 'shocking . . . the universal sense of justice.'" *United States v. Luisi*, 482 F.3d 43, 59 (1st Cir. 2007) (quoting *Russell*, 411 U.S. at 432). In 2012, the First Circuit observed that "[w]hile the doctrine is often invoked by criminal defendants, it has never yet been successful in this circuit." *United States v. Djokich*, 693 F.3d 37, 43-44 (1st Cir. 2012) (quoting *Luisi*, 482 F.3d at 59).

## IV. DISCUSSION

### A. Conflict of Interest

Mr. Sayles argues that there is "simply no reason the case was transferred from the Portland USA Office to New Hampshire USA Office, other than the fact the Government had recognized that it would be a conflict to prosecute Mr. Sayles, an identified victim in another federal criminal case." *Def.'s Mot.* at 4-5. He argues that the transfer did not cure "the initial taint caused by the conflict of interest." *Id.* at 8.

---

[1] There is a separate set of precepts for motions to dismiss an indictment where the defendant claims that the indictment is legally insufficient. Mr. Sayles makes no such claim, and the Court has not addressed those standards.

To bolster this conclusion, he points to both Maine and New Hampshire's Rules of Professional Conduct.[2] *Id.* In response the Government argues that the allegations of conflict are speculative and that, even if they do exist between Mr. Sayles and specific attorneys, do not "vicariously infect an entire government department." *Gov't Opp'n* at 7 (citing *In re Grand Jury Proc.,* 700 F. Supp 626, 631 (D.P.R. 1988) (citing *Costello*, 350 U.S. 359, 362 (1956))). To adopt Mr. Sayles' position, the Government argues, would "result in permanent immunity from federal prosecution, no matter how serious the offense, when the defendant is a victim in a separate prosecution." *Id.* at 7-8.

The Court agrees with the Government's argument in this instance. First, the Rules of Professional Conduct that Mr. Sayles cites in support of his position each speak to an attorney navigating conflicts of interest between clients. *See* ME. R. PRO. CONDUCT R. 1.7 ("Conflict-of-Interest: Current Clients"); ME. R. PRO. CONDUCT R. 1.8 ("Conflict of Interest: Current Clients: Specific Rules"); ME. R. PRO. CONDUCT R. 1.9 ("Duties to Former Clients"); ME. R. PRO. CONDUCT R. 1.10 ("Imputation of Conflicts-of-Interest: General Rule:"); N.H. R. PRO. CONDUCT R. 1.7 ("Conflicts of Interest"); N.H. R. PRO. CONDUCT R. 1.8 ("Conflict of Interest: Current Clients: Specific Rules"); N.H. R. PRO. CONDUCT R. 1.9 ("Duties to Former Clients"); N.H. R. PRO. CONDUCT R. 1.10 ("Imputation of Conflicts of Interest: General Rule"); N.H. R. PRO. CONDUCT R.

---

[2] The Maine Rules of Professional Conduct apply to federal prosecutors. *United States v. Klubock,* 832 F.2d 664, 667 (1st Cir. 1987) (en banc) (holding "that the supremacy clause was not implicated," by the Massachusetts's Supreme Judicial Court ethics rule because it "had been incorporated as a federal local rule . . . and that the local rule was within the rule-making power of the district court in the exercise of both the inherent and statutory authority of the courts to control ethical and procedural matters in their forum"). In the Maine District Court, Local Rule 83.3(a) adopts the Maine Rules of Professional Conduct as its standard. D. ME. LR 83.3.

1.11 ("Special Conflicts of Interest for Former and Current Government Officers and Employees"); N.H. R. PRO. CONDUCT R. 1.18 ("Duties to Prospective Client"). As Mr. Sayles is not a client of the prosecutors, but of his defense attorneys, these rules are inapplicable. Although these rules apply to government attorneys, Mr. Sayles has not identified any attorney-client relationship, prior representation, personal interest, or other circumstance giving rise to a disqualifying conflict under their provisions. In particular, the fact that Mr. Sayles was a victim in a separate federal prosecution handled by the same U.S. Attorney's Office does not, without more, establish that the prosecutors had a conflict of interest in prosecuting him.

Indeed, Mr. Sayles cites no caselaw to support his argument. *Gov't Resp.* at 7. Mr. Sayles claims that the "very case the Government cites in its own Opposition" supports his position. *Def. Reply* at 3 (citing *In re Grand Jury Proc.,* 700 F. Supp 626, 631 (D.P.R. 1988). But *In re Grand Jury Proceedings* involves a conflict of a very different nature, wherein the brother of the U.S. Attorney testified as a government witness in the grand jury investigation. *Id.* at 629-30. The district court noted that the related U.S. attorney in question properly recused himself from participation. *Id.* at 630 ("Clearly, a prosecutor who has a conflict of interest cannot administer justice. U.S. Attorney Daniel Lopez Romo recused himself from all participation in the grand jury investigation to avoid the appearance of impropriety"). The district judge then specifically distinguished the U.S. Attorney's Office from other firms regarding application of imputed conflicts rules and noted that both the ABA and other courts do not apply vicarious disqualification rules to government agencies. *Id.* (noting that

"the conflict of interest, whether by actual impropriety or the appearance of impropriety, only disabled the person(s) causing that conflict and did not vicariously infect an entire government department") (citing *United States v. Caggiano,* 660 F.2d 184, 191 (6th Cir. 1981)). The district court concluded that since the specific conflicted attorney had recused himself from participation, further judicial supervision of the proceedings was "not necessary or warranted." *Id.*

In short, *In re Grand Jury Proceedings* stands for the proposition that if a conflict exists for a specific U.S. Attorney, they can cure that conflict by recusing themselves from the proceedings, and no conflict will be imputed to the rest of the office.[3] Thus, even assuming arguendo that that the Me. USAO determined there was some conflict of interest in prosecuting Mr. Sayles, that conflict would be cured by the transfer of the case to a different U.S. Attorney's office. Consequently, the Court concludes that Mr. Sayles has not demonstrated a conflict of interest warranting dismissal of the second superseding indictment.

Mr. Sayles also gestures to Rule 3.8, which concerns special duties of prosecutors in criminal cases. N.H. R. PRO. CONDUCT R. 3.8.[4] But Rule 3.8 does not speak to conflicts of interest. Instead, Rule 3.8 obliges prosecutors to refrain from

---

[3] In making this point, the Court is not suggesting that the Me USAO had such a conflict. The transfer for prosecution to the NH USAO could as readily have been to avoid any possible suggestion of a conflict because some of the Maine AUSAs had dealt with Mr. Sayles as a victim as opposed to any real conflict of interest.

[4] Maine adopts a similar rule, obliging prosecutors to refrain from prosecuting charges they know are not supported by probable cause, to disclose exculpatory evidence to the accused, to refrain from conducting a case against any person whom that prosecutor also represents or has represented, and to refrain from conducting a case against any person for whom the complaining witness is currently or formerly represented by the prosecutor. *See* ME. R. PRO. CONDUCT R. 3.8. None are applicable in the instant case.

prosecuting charges prosecutors know are not supported by probable cause, to make reasonable efforts to assure that the accused has been advised of their rights and not pursue waiver of those rights from unrepresented defendants, and to disclose exculpatory evidence. *Id.* Rule 3.8 also bars prosecutors from subpoenaing other lawyers to present evidence about past or present clients unless it is essential to the successful completion of an ongoing investigation or prosecution, and to refrain from making extrajudicial comments on proceedings. *Id.* These are important standards that define and denote the outer bounds of vigorous prosecution to protect the legitimacy of the criminal process. But Mr. Sayles has not at this time accused the prosecutors of violating any of these obligations, and nothing in Rule 3.8 prohibits a prosecutor from bringing charges against an individual merely because that individual is also a victim in a separate criminal case.

## B. Grand Jury Proceedings

### 1. Exculpatory Evidence

Mr. Sayles also points to "a number of material misrepresentations and falsities made by the Government to the grand jury." *Def.'s Mot.* at 7. He argues that the exclusion of this evidence, which he views as exculpatory, warrants dismissal. *Id.* at 9-10. As a preliminary matter, the Court notes that it does not have the power to dismiss an otherwise valid indictment solely for the failure to disclose exculpatory evidence to a grand jury. *United States v. Williams,* 504 U.S. 36, 52 (1992) ("[i]mposing upon the prosecutor a legal obligation to present exculpatory evidence in his possession would be incompatible with" the grand jury system). Instead, to

warrant judicial involvement, misrepresentations or omissions must constitute "appalling and egregious" misconduct by the government. *Luisi*, 482 F.3d at 59.

Mr. Sayles finds it "remarkable that none of the federal prosecutors who presented Mr. Sayles'[s] case to the grand jury included information that Mr. Sayles was an identified victim in federal criminal case," and accuses the attorneys of purposefully omitting that fact. *Id.* at 6. This omission was particularly notable, Mr. Sayles argues, during TFO Lapierre's testimony to the grand jury, where he placed Mr. Sayles at 5 Cutts Street, where drugs were allegedly previously sold, on July 29, 2023 but neglected to mention that Mr. Sayles on that day was held captive and assaulted at that address. *Id.* at 7. Mr. Sayles notes that the prosecutors also omitted the fact that, on the day of the initial indictment, Mr. Sayles was in the hospital. *Id.* at 7-8.

The Government does not contend that Mr. Sayles is wrong about the omission but argues that there is no requirement they disclose Mr. Sayles's victim status in a different case to a grand jury. *Gov't's Opp'n* at 3. They note that his status as a victim does not go to any element of the charged offenses, nor is it an affirmative defense. *Id.* They further note that the charge in the original indictment was for distribution of drugs eighteen days prior to the assault, and that TFO Lapierre's testimony placed Mr. Sayles at 5 Cutts Street on two separate dates. *Id.* at 4.

The Court agrees that Mr. Sayles' status as a victim in another case is not an element of any of the charged crimes. Given this, the Court cannot conclude that the decision to withhold that information was "appalling and egregious." *Luisi*, 482 F.3d

at 59. Mr. Sayles's status as victim of a violent crime may (or may not) be relevant at trial. But the fact that evidence is potentially relevant at trial does not oblige the Government to present it to the grand jury. Accordingly, the Court concludes that the Government's failure to present evidence of Mr. Sayles's victim status does not, without more, constitute prosecutorial misconduct, and declines to engage in judgment of the strategic decisions of the Me. and NH USAOs regarding whether to present evidence of collateral issues. *Williams*, 504 U.S. at 51 (noting that imposing further rules on prosecutors presenting to the grand jury "would alter the grand jury's historical role, transforming it from an accusatory to an adjudicatory body").

There is also a more fundamental defect with the argument that these alleged errors warrant dismissal: the record does not support the necessary conclusion that such errors would have prejudiced the grand jury's decision to indict Mr. Sayles. *Bank of Nova Scotia v. United States* makes clear that a district court cannot dismiss an indictment without a showing that prosecutorial misconduct prejudiced the defendant. 487 U.S. at 255 ("Our conclusion that a district court exceeds its powers in dismissing an indictment for prosecutorial misconduct not prejudicial to the defendant is supported by other decisions of this Court"). There has been no such showing in the instant case aside from Mr. Sayles conclusory statement that he was "substantially prejudiced," and, had the grand jury heard this evidence "it is unlikely that [they] would have returned an indictment." *Def.'s Reply*. at 6-7. He does not explain why this is the case. Without more, the Court does not understand how the grand jury hearing testimony that Mr. Sayles was assaulted by other alleged drug

dealers at a date nearly three weeks after the date of the alleged transaction Mr. Sayles was charged for, at the same address at which the initial transaction allegedly took place, would affect the decision the grand jurors made to indict Mr. Sayles.

Mr. Sayles fares no better regarding his claim that TFO Lapierre's testimony regarding the guns seized was materially misleading. Mr. Sayles argues that TFO Lapierre falsely claimed that all five guns seized were determined to be actual firearms given the contradictory Test Fire Report, which stated that only three of the five firearms functioned. *Def.'s Mot.* at 10; *Id.* Attach. 1 at 80. The Government responds that "the law is clear that a weapon does not need to be operable to be a firearm." *Gov't's Opp'n* at 6 (citing *United States v. Yannot*, 42 F.3d 999, 1006 (6th Cir. 1994); *United States v. Ford,* 548 F.3d 1, 7 (1st Cir. 2008)). The Court agrees. The fact that two weapons failed to function during testing does not establish that they were not firearms within the meaning of federal law.

Moreover, each count Mr. Sayles was charged with regarding possession of firearms would be satisfied by the possession of merely one firearm. Consequently, even if the Court accepted Mr. Sayles's argument that the two weapons that did not fire cannot be deemed actual firearms, the characterization would be harmless. *United States v. Reyes-Echevarria,* 345 F.3d 1, 5 (1st Cir. 2003) ("Reyes' alleged errors are rendered harmless because an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on its merits") (citing *United States v. Flores-Rivera,* 56 F.3d 319, 238 (1st Cir. 1995).

**2. Witness Reliability Regarding the Controlled Purchase**

Mr. Sayles also raises claims of material misrepresentation before the grand jury regarding the controlled purchase law enforcement's confidential source engaged in on July 11, 2023. TFO Lapierre testified to the grand jury that the informant was searched prior to the transaction and no drugs were discovered. *Def.'s Mot.* at 9. Mr. Sayles alleges that the video surveillance worn by the confidential source reveals that she was holding a "red weed vape"[5] in her hand. Mr. Sayles also argues that the exchange between the confidential informant and TFO Lapierre included in the same video provides evidence that the informant took some of and therefore tampered with the suspected drugs.

The Government first argues that there is no indication beyond Mr. Sayles's assertion that the vape pen contained cannabis rather than nicotine. *Gov't's Opp'n* at 4-5. The Government further notes that, even assuming the confidential informant did have cannabis on her person, that TFO Lapierre's testimony would constitute a mistake rather than an intentional misrepresentation. *Id.* The Government also contests Mr. Sayles's characterization of the audio and video recordings of the exchange between the Confidential Informant and TFO Lapierre and claims that the exchange in no way evidences the Confidential Informant skimming drugs from the purchase. *Id.* at 5. Finally, the Government notes that, even if the Confidential Informant had retained some of the drugs for themselves, nothing in TFO Lapierre's

[5] A vape pen is an e-cigarette that can be used to deliver nicotine, cannabis, flavorings, chemicals, or other substances. *See* Ctrs, for Disease Control & Prevention, *E-Cigarette, or Vaping, Products Visual Dictionary*, 3, https://www.cdc.gov/tobacco/basic_information/e-cigarettes/pdfs/ecigarette-or-vaping-products-visual-dictionary-508.pdf (last visited October 22, 2026).

testimony directly contradicted that fact and he thus cannot be characterized as intentionally misrepresenting facts. *Id.* at 5-6.

The contested video and audio are unavailable to the Court at this time, and thus the Court cannot resolve the factual disputes between the parties. However, it is unnecessary to do so, as Mr. Sayles' claim must fail because he has not alleged with specificity how the purported misrepresentation prejudiced grand jury deliberations and has not argued that the evidence, even as he understands it, was insufficient for the grand jury to indict. *United States v. Giorgi,* 840 F.2d 1022, 1030 (1st Cir. 1979) (noting that "we have declined to dismiss an indictment even in the fact of reprehensible conduct by a prosecutor where the appellants failed to allege that the evidence presented to the grand jury was insufficient to support the indictment") (citing *United States v. DiGregorio*, 605 F.2d 1184, 1189 (1st Cir. 1979)).

Dismissal of an indictment is an extraordinary remedy rarely ordered by courts. *Id.* ("The basic rule is that, because of the constitutionally mandated independence of the grand jury and the prosecutor, courts should be reluctant to dismiss an indictment. A dismissal, therefore, will be ordered only for serious and blatant prosecutorial misconduct that distorts the integrity of the judicial process") (citing *United States v. Ogden*, 703 F.2d 629, 636 (1st Cir. 1983)). To warrant dismissal, Mr. Sayles must demonstrate Government misconduct that was "so appalling and egregious as to violate due process by 'shocking . . . the universal sense of justice.'" *Luisi*, 482 F.3d at 59 (quoting *Russell*, 411 U.S. at 432). He has not done so at this time. The missteps Mr. Sayles has argued, even if accepted as alleged, do

not clearly infect independent resolution of the core question before a grand jury when deciding to indict: "whether there is adequate basis for bringing a criminal charge." *Williams,* 504 U.S. at 51 (citing *United States v Calandra*, 414 U.S. at 343); *United States v. Maceo,* 873 F.2d 1, 4 ("misstatements or mistakes alone do not justify dismissing an indictment that is facially valid . . . [c]learly, there was other sufficient evidence that was both competent and material (such as Officer Haddock's eyewitness testimony about the actual transaction) to sustain the charge issued").

If Mr. Sayles is correct that the exchange between the Confidential Informant and TFO Lapierre indicated that the Informant was either using drugs or skimming them from the controlled purchase, his argument would go to the reliability of that individual as a witness, an argument best raised at trial. However, without more, that argument is insufficient to warrant the Court's intervention or the extraordinary remedy of dismissal at this stage. *Reyes-Echevarria*, 345 F.3d at 5 (*quoting Flores-Rivera*, 56 F.3d at 328) ("a court should not inquire into the sufficiency of the evidence before the indicting grand jury, because the grand jury proceeding is merely a preliminary phase and all constitutional protections are afforded at trial").

## V. CONCLUSION

Because he has not pleaded facts which allow the Court to infer willful prosecutorial misconduct that substantially altered the grand jury proceedings, the Court DISMISSES with prejudice Steven Sayle's Motion to Dismiss the Second Superseding Indictment (ECF No. 151).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 29th day of October, 2026